James D. Allen v. Commissioner.
Allen v. Commissioner
Docket No. 337-67.
United States Tax Court
T.C. Memo 1968-218; 1968 Tax Ct. Memo LEXIS 83; 27 T.C.M. (CCH) 1082; T.C.M. (RIA) 68218; September 26, 1968. Filed James D. Allen, pro se, Route 9, Maryville, Tenn. Martin R. Nathan, for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined a deficiency in petitioner's income tax for the taxable year 1962 in the amount of $980.35. The only question for our determination is whether petitioner qualifies as a bona fide resident of a foreign country so as to make the tax exemption provisions of section 911(a)(1), I.R.C. 1954, [1] applicable. Findings of Fact Some of the facts have been stipulated and the stipulations and exhibits attached thereto are incorporated *84 herein by this reference. The petitioner, James D. Allen and his wife, Anna Elizabeth Allen, [2] filed a joint Federal income tax return for the taxable year 1962 with the director of international operations, internal revenue service in Washington, D.C. At the time of filing the petition, petitioner resided in Maryville, Tennessee. Petitioner was employed by Pan American World Airways, Guided Missiles Range Division (hereinafter referred to as Pan American), as an electrician to work at the Grand Bahamas Auxiliary Air Force Base, a missile tracking station, located on Grand Bahama Island. He commenced his employment on April 4, 1960 and was employed by Pan American at the Grand Bahama Island site during the period of his employment here involved. He was subject to the contracts entered into by Pan 1083 American and the treaties entered into by the United States of America. At the time the petitioner commenced his employment with Pan American, there was no agreement as to the length of time that he would remain overseas. Petitioner's employment *85 with Pan American terminated on February 28, 1963. Prior to 1950, the government of the United States of America established at Cape Canaveral (now renamed Cape Kennedy), Florida, a site for the development of a long-range missile program. The responsibility for the program devolved upon the United States Air Force. Numerous down-range missile tracking and supporting stations were to be constructed and developed. On July 21, 1950, an "Agreement and Exchange of Notes" between the United States of America and the United Kingdom of Great Britain and Northern Ireland was entered into and signed at Washington, D.C., providing for the establishment and maintenance on the Bahama Islands of a guided missile testing range site to be known as "The Bahamas Long Range Proving Ground." The agreement, provided to be effective for a minimum of 25 years, was the primary and basic agreement governing the use by the United States of the various Bahama Islands, including Grand Bahama Island, in the pursuit of the downrange guided missile testing program. The 1950 Bahamas agreement providing for the establishment and maintenance of guided missile tracking stations on the Bahama Islands provided, *86 inter alia; that the United States would have the right within the range area to launch and fly guided missiles; to establish, maintain and use instrumentation and communications systems, including radar, radio, land lines and submarine cables for operational purposes in connection with the flight testing range; and, to operate such vessels and aircraft as may be necessary for purposes connected directly with the flight testing range. The 1950 Bahamas agreement further provided that "Access to the Sites shall not be permitted to persons not officially connected with the Bahamas Long Range Proving Ground * * *" except by the joint consent of the senior British and American representatives, and that "The immigration laws of the Bahama Islands shall not operate or apply so as to prevent admission into the Bahama Islands, for the purposes of this Agreement, of any member of the United States Forces posted to a Site or any person * * * employed, by or under a contract with, the Government of the United States of America in connection with the establishment, maintenance, or use of the Flight Testing Range; * * *." The 1950 Bahamas agreement further provided that "No member of the United *87 States Forces or national of the United States, serving or employed in the Bahama Islands in connection with the establishment, maintenance or use of the Flight Testing Range, and residing in the Bahama Islands by reason only of such employment, or his wife or minor children * * * would be liable to the government of the Bahama Islands for income tax (except in respect to income derived from the Bahama Islands), poll tax or similar tax on his person, import, excise, consumption or other tax, duties or imposts of the Bahama Islands with respect to personal belonging imported by United States citizens or purchased by them at post exchanges or commissary stores at the site. The exemption from taxation privileges were also extended under the terms of the agreement to the contractors and subcontractors of the government of the United States, and included specifically any "income tax * * * in respect of any profits derived under a contract made * * * with the Government of the United States of America in connection with the establishment, maintenance or use of the Flight Testing Range * * *." Article VII of the 1950 Bahamas agreement, entitled "Arrest and Services of Process," provides, *88 in part, as follows: (1) No arrest of a person who is a member of the United States Forces or who is a national of the United States subject to United States miliary [sic] law shall be made and no process, civil or criminal, shall be served on any such person within any Site except with the permission of the Commanding Officer in charge of the United States Forces in such Site; * * *. This agreement further provides for almost total jurisdiction of the United States on its sites in the Bahamas. In 1953 the United States Air Force entered into a cost-plus-fixed-fee contract, numbered AF 18(600)-881, with Pan American, under which Pan American undertook to furnish the services, personnel and material necessary for the management, operation and maintenance, under the 1084 direction of the Air Force, of the missile test range facilities installed by the Air Force on the various bases at Cape Canaveral (now Cape Kennedy), Patrick Air Force Base, Florida, and various downrange sites, including that located on Grand Bahama Island. A similar contract between the Air Force and Pan American was in effect during the years here involved. Pan American was responsible for the operation *89 and management of the missile stations, including maintaining facilities and equipment and planning and conducting range test operations. The presence of Pan American as contractor for the government of the United States, and of its employees, on the downrange missile tracking site was subject to the provisions of the 1950 Bahamas agreement entered into between the government of the United States and that of Great Britain. Petitioner's employment with Pan American was for work in the Guided Missiles Range Division of the company and in connection with the performance of his duties, he was subject to all requirements of the contract between the United States of America and the company, at such places and for such time as the company would determine. Pan American was responsible for the housing, feeding, maintenance, supply, health, medical, recreation and assignment of personnel at the base on Grand Bahama Island. Food, prepared and served by Pan American cooks, was provided for its employees in cafeteria-style dining halls located on the bases at no cost to the employees. Post exchanges were operated in conjunction with the dining halls for the employees' convenience. Laundry service *90 and recreational activities were provided free of charge and a roving barber employed by Pan American was periodically available for haircuts at a small charge. While working on the Bahama Islands, petitioner ate all of his meals on the missile tracking base, and lived on the base in barrack-type quarters provided by Pan American without charge. Each missile tracking base had both a military base commander and a Pan American base manager. Petitioner, as a Pan American employee, was responsible only to the Pan American base manager. Petitioner was subject to United States military law while on the missile tracking site. Each Pan American employee was expected to work any and all hours necessary to accomplish the mission of the missile test range, but during off-work hours they could go and come from the missile tracking base to the island community without restriction. Pan American did not encourage its employees stationed at the downrange missile tracking sites to bring their families to the islands because living conditions were poor. The nearest suitable housing to the Grand Bahamas Island Tracking Base was in Freeport, on Grand Bahama Island, approximately 20 miles from the *91 base over rough roads. Petitioner's wife and family did not accompany him to Grand Bahama Island. Rather, petitioner's family resided in Maryville, Tennessee, while he was employed by Pan American. Petitioner was not present in a foreign country for 510 full days within any period of 18 consecutive months, and during the period involved, petitioner was an American citizen. On the joint Federal income tax return filed by petitioner and his wife for the taxable year 1962, the salary ($8,022) petitioner received from Pan American for his services in connection with his employment in the downrange missile program were not reported as income subject to taxation. The Commissioner disputed the tax treatment of petitioner's salary and determined a deficiency accordingly. During the taxable year 1962, petitioner also incurred and paid the following: Drug Expenses
$ 169.25
Medical Expenses
1,238.70
Charitable Contributions
7.80
Interest Expense
166.23
State Sales Tax
121.00
Gasoline Tax
126.00
Automobile License Tax
10.00
Cigarette Tax
52.00
State and County Real Estate Tax
77.50
Ultimate Finding of Fact Petitioner was not a bona fide resident of *92 the Bahama Islands during the taxable year 1962 within the meaning of section 911(a) (1) of the Internal Revenue Code of 1954. Opinion The Commissioner contends that the case of Garvis O. Boyd, 46 T.C. 252, following Commissioner v. Matthews, 335 F. 2d 231 (C.A. 5, 1085 1964), controls the issue here. We agree. The facts here pertinent are identical with those in Boyd, and for the reasons set forth in those cases, we find that for the taxable year 1962, petitioner was not a bona fide resident of a foreign country within the meaning of section 911(a) (1). [3]
*93 As the Commissioner has conceded that in computing petitioner's 1962 taxable income, he is entitled to deduct [4] the expenses enumerated in the Findings of Fact, Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩
2. Anna Elizabeth Allen is not a party to this proceeding as she failed to file a petition to this Court within the statutory period.↩
3. SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES. (a) General Rule. - The following items shall not be included in gross income and shall be exempt from taxation under this subtitle: (1) Bona fide resident of foreign country. - In the case of an individual citizen of the United States who establishes to the satisfaction of the Secretary or his delegate that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) which constitute earned income attributable to services performed during such uninterrupted period. The amount excluded under this paragraph for any taxable year shall be computed by applying the special rules contained in subsection (c).↩
4. Of course, the medical and drug expense in the amounts of $1,238.70 and $169.25, respectively, are subject to their respective limitations in computing the amount deductible.↩